UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANK E. BYBEE,

    Plaintiff,

v.                                                    CASE NO. 8:15-cv-1026-T-23MAP

TOM KNIGHT, et al.,

    Defendants.

_____/

## ORDER

Frank Bybee, a Sarasota County sheriff's deputy, sues (Doc. 2) Tom Knight individually and as sheriff of Sarasota County for violation of Bybee's right to free speech and for civil conspiracy. Also, Bybee sues both Jeffrey Conley and Conley RV for violation of the Law Enforcement Officers' Bill of Rights, for tortious interference with Bybee's employment, and for civil conspiracy. The defendants move (Docs. 42, 59) for summary judgment.

## BACKGROUND

In May 2014 Bybee delivered his recreational vehicle to Conley RV for minor repairs. Visiting the dealership several times in June and July, Bybee repeatedly found his vehicle unrepaired and unlocked. Returning to the dealership on

September 1, 2014, Bybee found human feces covering the vehicle's floor, refuse — including a used condom — littering the bed, and mold proliferating.

Bybee proposed that Conley RV buy the vehicle for $27,000 to $32,000 (Doc. 60-1 at 9), but Conley RV refused. In response Bybee contacted Tampa's Channel 8 news about Conley RV's failure to secure the vehicle and failure to compensate Bybee for the damage.

At about noon on September 16, Channel 8 interviewed Bybee, who told Channel 8 off-the-air but not off-the-record that Bybee worked as a sheriff's deputy in Sarasota County. Before the interview's debut at eleven o'clock at night on September 23, Channel 8 "teased" the story. The teasers, which aired the afternoon of September 23, identified Bybee as a sheriff's deputy in Sarasota County.

Herb Hoelle, Conley RV's general manager, saw a teaser and called John Saputo (a customer of Conley's Buick dealership) the afternoon of September 23. Explaining that Conley RV felt intimidated "because [Bybee] was a sheriff's deputy," Hoelle asked whether Saputo "knew anybody" in the sheriff's office. (Doc. 63-1 at 12) Saputo admitted knowing the sheriff (Doc. 63-1 at 12), and elsewhere Saputo explains that the sheriff and Saputo met through political rallies. (Doc. 63-1 at 5) In an e-mail to Saputo, Hoelle again explained Conley RV's concern about Bybee, and Saputo forwarded the e-mail to the sheriff. On September 24, the sheriff wrote Saputo, "Got the information. My group is working on this." (Doc. 47 at 5)

Incidentally Wendy Rose, the public-affairs director at the sheriff's office, and Captain Charles Thorpe heard Channel 8 mention a "Sarasota deputy."[1] Concerned that Bybee invoked his employment as a sheriff's deputy to draw public attention to the dispute with Conley RV, Thorpe asked Bybee and Lieutenant Joseph Giasone about the news story. (Doc. 58 at 2–4) The morning of September 24, Bybee told Giasone and Sergeant Michael Dumer, Bybee's immediate supervisor, that the interview occurred off-duty and that the interview addressed only the dispute with Conley RV. Dumer relayed Bybee's statement to Thorpe, who relayed the statement to Colonel Kurt Hoffman.

Independent of Thorpe's inquiry, Rose asked Major Paul Richard whether he knew about the interview. Lacking knowledge of the interview, Richard asked Thorpe to investigate the interview's circumstances. Thorpe, Rose, and Richard learned from a Channel 8 e-mail that Bybee's interview occurred during Bybee's lunch, about noon. Richard forwarded the Channel 8 e-mail to Hoffman.

Because protocol requires a deputy to remain on-duty during lunch (Doc. 49 at 4), Hoffman directed Lieutenant Mike Mercurio to investigate whether Bybee spoke truthfully to Dumer and Giasone. (Doc. 56 at 4–5) Mercurio concluded that Bybee untruthfully told Dumer and Giasone that he remained off-duty during the interview. Allegedly as a result of Bybee's dishonesty, Dumer and Giasone lost

---

[1] Bybee's chain of command ascends from Sergeant Michael Dumer to Lieutenant Joseph Giasone to Captain Charles Thorpe to Major Paul Richard to Colonel Kurt Hoffman and finally to Sheriff Tom Knight.

confidence in Bybee and requested that Hoffman transfer Bybee from the criminal investigation division to the patrol division. (Doc. 44 at 5)

Bybee alleges that the sheriff disciplined Bybee for criticizing Conley RV. Condemning the internal affairs investigation as a "political witch-hunt," Bybee contends that the sheriff disciplined Bybee to appease Saputo, who donated several cases of beer to the sheriff's political campaigns over the years (Doc. 63-1 at 9–10 (Saputo)).

## DISCUSSION

**1. Retaliation claim against the sheriff**

To prove a First Amendment retaliation claim, a government employee must show that he spoke as a citizen on a matter of public concern, that the employee's interest in free speech outweighs the employer's interest in the efficient delivery of a public service, and that an intent to retaliate against the employee for exercising the right to free speech "substantially motivated" the employer's disciplinary decision. *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir. 1989).[2]

---

[2] Also, the employee must show an "adverse employment action." *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1300 (11th Cir. 2005). Concededly, Bybee's net loss of $1,800 in pay upon transfer to the patrol division adversely affected Bybee's employment. (Doc. 46 at 4); *see also Akins*, 420 F.3d at 1300 ("Any other conduct that alters . . . the employee's compensation . . . qualifies as an adverse employment action.") (internal quotation omitted).

### A. Speech as a citizen on a matter of public concern

Bybee spoke as a citizen, not as a government employee. Interviewed in a public park, Bybee criticized Conley RV for failing to secure Bybee's vehicle and for failing to compensate Bybee for the vehicle's destruction. Bybee removed his badge for the interview and, although he wore "work clothes," the clothes display no text or symbol that identifies Bybee as a sheriff's deputy. Also, Bybee's speech addressed a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 147 (1983) (holding that the determination whether an employee's speech concerns a matter of public import depends on the speech's "content, form, and context"). Exposing a business's alleged wrongdoing legitimately interests the public.

Citing *Pickering v. Board of Education*, 391 U.S. 563 (1968), the sheriff argues that Bybee's retaliation claim fails because Bybee spoke on a matter of personal concern. (Doc. 42 at 21)  Though several decisions hold that a government employer lawfully may discipline an employee for publicly voicing a "personal dispute," in each instance an employee expresses a grievance about a circumstance attendant to the employment, i.e., a personnel dispute. *See, e.g.*, *Connick*, 461 U.S. at 138–45 (holding that an employee's criticism of her transfer to another division affected nothing of "public import")*; Alves v. Board of Regents*, 804 F.3d 1149 (11th Cir. 2015) (holding that employees' allegations that a supervisor mismanaged a program and "created an unstable work environment" addressed nothing of public concern); *Merkel v. Abeita*, 194 Fed. Appx. 562, 566 (10th Cir. 2006) (O'Brien, J.) (holding that

an employee's complaint that the employee remained for too many hours "on call" addressed nothing of public concern).  By contrast, Bybee's speech criticized a local business about the destruction of an RV left for repair, an affair wholly unrelated to Bybee's employment by the sheriff.

### B. *Pickering* balance

Channel 8 interviewed Bybee at a public park, not at the sheriff's office, and Bybee criticized Conley RV, not the sheriff.  Although several deputies told some feculent jokes after Channel 8 aired Bybee's interview, the record suggests no resulting impediment to the sheriff's ability to serve the public.  Because Bybee's interview created no impediment to the efficient delivery of police service, Bybee's weighty interest in directing public attention to the circumstances at Conley RV outweighs the infinitesimal effect, if any, on the sheriff's delivery of a public service.

### C. Retaliatory intent

The determination whether an employer's retaliatory intent motivated the discipline depends on whether the employer evinced hostility to the speech, whether the plaintiff disproves the employer's asserted reason for the discipline, whether any telling inconsistency or other mark of pretext appears in the asserted reason for the discipline, whether the defendant initiated the internal investigation that led to the discipline, and whether the discipline followed the employee's protected speech with a suggestive immediacy.  *Stanley v. City of Dalton*, 219 F.3d 1280, 1291 n.20 (11th Cir. 2000).  "Purely circumstantial" evidence can satisfy the plaintiff's burden to show

that the speech caused the discipline. *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1564–65 (11th Cir. 1995).

Considered in sum, the record insufficiently evidences that Bybee's criticism of Conley RV caused the sheriff to discipline Bybee. To prove the sheriff's retaliatory motive, Bybee cites the statements of several sheriff's employees that the sheriff "was not happy." (*E.g.*, Doc. 58 at 4) The statements fail to explain the source or the object of the sheriff's unhappiness and certainly fail to establish a causal connection between Bybee's criticism of Conley RV and the sheriff's transfer of Bybee from the criminal investigation division to the patrol division.[3]

Also, Bybee cites the Hoelle e-mail and the sheriff's response. Hoelle asked Saputo, "Would you mind contacting Sheriff Knight and have someone c[o]ntact us so we might discuss this and see if we can [] get him to stand down." (Doc. 47 at 6) After receiving the Hoelle e-mail, the sheriff wrote Saputo, "Got the information. My group is working on this." (Doc. 47 at 6) The sheriff's opaque response fails to explain exactly what "work" the sheriff's "group" undertook, but from this ambiguity Bybee purports to infer that the sheriff resolved to discipline Bybee. Insufficient to permit a reasonable inference of retaliatory intent, the Hoelle e-mail and the sheriff's response cannot defeat summary judgment.

---

[3] Also, Bybee alleges that several other events show the sheriff's hostility to Bybee's speech. For example, Bybee alleges that he was assigned fewer cases during the internal-affairs investigation and that Dumer failed to give Bybee a receipt when Bybee surrendered his gun and badge for the suspension. Either the record contradicts the allegations (*See, e.g.*, Doc. 43 at 4, which shows that Bybee was assigned about the same number of cases as other detectives) or the allegations require drawing unreasonable inferences (e.g., that the failure to provide a receipt demonstrates hostility to Bybee's speech).

Similarly, the other *Stanley* factors fail to evidence a retaliatory intent.  Bybee discounts as pretextual the sheriff's proferred reason for the discipline but fails to show any evidence raising a factual dispute as to pretext.  Bybee told supervisors that he interviewed with Channel 8 while "off-duty" or "after hours."[4]  (Doc. 51 at 21 (Bybee); Doc. 53 at 13 (Giasone); Doc. 52 at 2 (Dumer))  Unless a deputy takes "wash-out" time,[5] the deputy remains on-duty from eight-thirty in the morning until four-thirty in the afternoon, including during lunch.  (Doc. 49 at 4 (Richard))  Bybee was interviewed during lunch, around noon.  (Doc. 48 at 41)  A deputy may use wash-out time only with a supervisor's approval (Doc. 51 at 21 (Bybee); Doc. 49 at 5 (Richard)), but Bybee failed to ask a supervisor for approval.  (Doc. 51 at 21–22 (Bybee); Doc. 52 at 6 (Dumer); Doc. 48 at 13 (Mercurio))  Lacking a supervisor's permission to use wash-out time, Bybee undisputedly remained on-duty during the lunchtime interview.

The sheriff persuasively explains that Bybee's purposeful false statement, which destroyed necessary trust, prompted the transfer.  A detective often testifies in court, and an officer with an incident of untruthfulness in his disciplinary record becomes subject to attack on cross-examination based on a proven lack of credibility.

---

[4] Citing purported discrepancies in Dumer's and Giasone's statements, Bybee emphasizes the distinction between "off-duty" and "after hours" (Doc. 63 at 17), but the distinction lacks significance. In either case, Bybee remained on-duty during the interview.

[5] A deputy ordinarily works nine hours daily. However, a deputy who works more than nine hours in a day may use the excess time to reduce his workload another day in the same pay period. For example, if a deputy works eleven hours one day, the deputy may claim two hours of "wash-out" time another day and reduce his workload to seven hours.

Bybee's studied and tactical falsification compelled Dumer and Giasone to request Bybee's transfer from the criminal-investigation section. (Doc. 43 at 3–4 (Dumer); Doc. 44 at 5 (Giasone))

No inconsistency, inauthenticity, or other mark of pretext appears in the reason offered by the sheriff for Bybee's discipline. The sheriff, Mercurio, Hoffman, Richard, Thorpe, Giasone, and Dumer uniformly insist that Bybee's discipline resulted from untruthfulness. (Doc. 47 at 3 (Knight); Doc. 56 at 17 (Mercurio); Doc. 54 at 5 (Hoffman); Doc. 57 at 3 (Richard); Doc. 58 at 13 (Thorpe); Doc. 44 at 5 (Giasone); Doc. 52 at 8 (Dumer))

Also, Bybee cites as evidence of a retaliatory motive the alacrity with which the sheriff ordered the internal affairs investigation; the interview aired September 23, and Mercurio began the investigation on September 25. (Doc. 48 at 12) If discipline closely follows protected speech, ordinarily an inference of causation is available to the finder of fact. *Brannon v. Finkelstein*, 754 F.3d 1269, 1276 (11th Cir. 2014) (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 745 (11th Cir. 1996)). Citing *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (Manion, J.), the sheriff correctly argues that a causal inference dependent on temporal proximity is unreasonable in this action because of an intervening cause — Bybee's untruthful report to the internal investigators. *See Carter v. City of Melbourne*, 731 F.3d 1161, 1170 (11th Cir. 2013); *Kidwell*, 679 F.3d at 967–68 (explaining that an event intervening between the speech and the discipline can eliminate an inference of causation by the more remote event).

Bybee alleges that the sheriff initiated the internal affairs investigation as a "political witch-hunt" (Doc. 63 at 15–16), but the record shows that other sheriff's employees opened the internal affairs investigation after learning of Bybee's apparent untruthfulness. After Hoffman learned about the Channel 8 e-mail suggesting that Bybee remained on-duty during the interview, Hoffman instructed Mercurio to investigate. (Doc. 54 at 2–3 (Hoffman); Doc. 56 at 15–16 (Mercurio))

Conceding that Mercurio initiated the investigation at Hoffman's request, Bybee responds that Mercurio's at-will status compelled Mercurio to appease the sheriff. (*See* Doc. 63 at 9) Although Mercurio feels no obligation "to go along with what [Mercurio's supervisors] want," (Doc. 56 at 3), the sheriff can terminate Mercurio without cause because of Mercurio's "specialty" employment status. (Doc. 55 at 12) Although a reasonable jury could infer that Mercurio's vulnerable status as an at-will employee prompted Mercurio to initiate the internal-affairs investigation to appease the sheriff (*See generally Myers v. United States*, 272 U.S. 52 (1926) (explaining that at-will termination permits a chief executive to control a subordinate employee)), no reasonable jury could infer that Bybee's Channel 8 interview about Conley RV caused the discipline.

Also, Bybee alleges that a supervisor told him "this is political and we don't know where it's going" (Doc. 1 at 10), but the record fails to show a comment suggesting that donor politics motivated the sheriff to retaliate against Bybee. Neither Dumer nor Giasone recalls telling Bybee "this is political." (Doc. 52 at 4

(Dumer); Doc. 53 at 4 (Giasone))  Other than the Hoelle e-mail, Bybee cites no evidence that either donor politics or a hostility to Bybee's speech motivated Bybee's discipline.  (Doc. 51 at 47 (Bybee))

Viewing the record favorably to Bybee and permitting reasonable inferences in Bybee's favor, no reasonable jury could conclude that the sheriff disciplined Bybee for criticizing Conley RV.  The sheriff's motion for summary judgment on count one is granted.

**2. Retaliation claim against the sheriff individually**

A government official who performs a discretionary function is immune from suit unless the official's conduct violates a clearly established constitutional right. *Stanley*, 219 F.2d at 1285 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Administering discipline is a discretionary function. *Anderson v. Burke County*, 239 F.3d 1216, 1221–22 (11th Cir. 2001).  But as explained in section one, Bybee fails to show a constitutional violation. *See VanDeWalle v. Leon County*, 2016 WL 4709079 at *5 (11th Cir. Sept. 9, 2016) (requiring that a plaintiff at summary judgment show a constitutional violation to abrogate qualified immunity).

Also, although Bybee correctly argues that the *Pickering* balance weighs in Bybee's favor, Bybee concedes that clearly established law fails to show the illegality of the sheriff's conduct. (Doc. 63 at 19 ("It does not appear that the Eleventh Circuit has had the opportunity to join [the Fifth, Sixth, and Eighth] Circuits.")).  Clearly established law means precedent of the United States Supreme Court, the United

States Court of Appeals for the Eleventh Circuit, and the Supreme Court of Florida. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).  Because Bybee fails to show a constitutional violation and because the applicable precedent fails to establish clearly the illegality of the sheriff's conduct, qualified immunity shields the sheriff from suit in an individual capacity.  The sheriff is entitled to summary judgment on count two.

**3. Violation of the Law Enforcement Officers' Bill of Rights**

Bybee sues Jeffrey Conley and Conley RV for violating Section 112.532, Florida Statutes.  Under that section, an officer may sue a person or corporation for filing a knowingly false complaint against the officer.  Bybee alleges that Conley and Conley RV falsely accused Bybee of slander.

The sheriff received an e-mail from Hoelle claiming that Bybee "slandered us all over the Internet . . . . We repaired all the issues that [Bybee] had and the coach is in better shape th[a]n when he left it." (Doc. 47 at 6)  Also, Hoelle's e-mail alleges that Bybee, by claiming that the dealership failed to secure Bybee's vehicle, slandered Conley RV.  An August 5, 2015 order holds that Conley RV's email to the sheriff constitutes a complaint under Section 112.532. (Doc. 23)

Because Bybee sues Conley RV, not Hoelle, Bybee's claim succeeds only if Hoelle sent the e-mails as an agent of Conley RV.  Hoelle's second e-mail to the sheriff identifies Hoelle as the general manager of Conley Buick GMC. (Doc. 47 at 8)  Also, Jeffrey Conley admits that the word "we" in Hoelle's e-mails might

- 12 -

include Conley RV (Doc. 60-1 at 6), an admission that raises an issue of fact about whether Conley RV filed a complaint under Section 112.532.

Viewing the record favorably to Bybee, a reasonable jury might conclude that Conley RV knew the falsity of the complaint. Jeffrey Conley admitted learning "after the fact" that the vehicle lacked a visible sign of forced entry. (Doc. 60-1 at 2 (Conley)) If Hoelle e-mailed a complaint to the sheriff despite Conley RV's knowledge that the vehicle lacked a visible sign of forced entry, Conley RV likely knew of the complaint's falsity. In sum, the testimony of Bybee and Conley raises a factual dispute about whether Hoelle knowingly and falsely complained to the sheriff about Bybee. Conley RV's motion for summary judgment on count three is denied.

Because Bybee fails to show that Jeffrey Conley filed a complaint, Jeffrey Conley is entitled to summary judgment on count three.

**4. Tortious interference with Bybee's employment**

A defendant commits tortious interference if the defendant intentionally and unjustifiably interferes with the plaintiff's business relation and subsequently harms the plaintiff. *Tamiami Trail Tours, Inc., v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). A business relation includes employment. *See Rudnick v. Sears, Roebuck and Co.*, 358 F.Supp.2d 1201 (S.D. Fla. 2005) (Cohn, J.); *Florida Power & Light Co. v. Fleitas*, 488 So. 2d 148, 151 (Fla. 3d DCA 1986) (Hubbart, J.).

As explained in section three, Bybee raises a factual dispute about whether Conley RV knowingly filed a false complaint. If Conley RV knowingly filed a false

- 13 -

complaint, a reasonable jury might infer that Conley RV intentionally interfered with Bybee's employment. But Bybee fails to show a factual dispute about whether Conley RV's complaint harmed Bybee. Because the evidence shows that Bybee's discipline resulted from Bybee's dishonesty, Conley RV is entitled to summary judgment on count four.

Also, because Bybee fails to show any evidence that Jeffrey Conley interfered with Bybee's employment, Conley is entitled to summary judgment on count four.

**5. Conspiracy**

Conspiracy requires an agreement between two or more people to commit a tort, an overt act to further the conspiracy, and harm to the plaintiff. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997) (Green, J.).

Viewed favorably to Bybee, the record shows no factual dispute about whether the defendants agreed to violate Bybee's right to free speech or to interfere with Bybee's employment. Although Bybee alleges that Hoelle and the sheriff "agreed to punish" Bybee (Doc. 63 at 20), no reasonable jury could infer from the Hoelle e-mail and the sheriff's response that the two agreed specifically to violate Bybee's right to free speech or to interfere with Bybee's employment. *See Eagletech Comm., Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012) (Ciklin, J.) (dismissing as too vague a claim that the defendants "conspired to devise a scheme").

Even assuming that the Hoelle e-mail and the sheriff's response permit an inference that Conley RV and the sheriff agreed to commit a tort, Bybee fails to show

that he suffered harm because of the agreement. As explained in section one, the record shows that Bybee's dishonesty during the internal investigation caused Bybee's transfer.

Also, Bybee fails to show any evidence that Jeffrey Conley agreed to commit a tort. The defendants are entitled to summary judgment on count five.

**6. Supplemental jurisdiction**

The retaliation claims under Section 1983 invoke federal-question jurisdiction, but this order grants summary judgment on those claims. Because a Florida plaintiff sues a Florida defendant under Florida law in count three (the sole remaining claim), the count fails to invoke diversity jurisdiction.

In accord with 28 U.S.C. § 1367(c)(3), the action is remanded to state court. *See LA Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) ("[I]f the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims.") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Bybee suffers no prejudice from remanding this action to state court. *Cf. Ingram v. School Bd. of Miami-Dade County*, 167 Fed. Appx. 107 (11th Cir. 2006) (holding that a plaintiff suffers prejudice when the complaint was originally filed in federal court, precluding remand, and a limitation would bar the plaintiff's claim if re-filed in state court).

## CONCLUSION

Bybee spoke as a citizen on a matter of public concern and the First Amendment insulates him from retaliation.  But no reasonable jury could conclude, despite Bybee's lying during an internal affairs investigation, that the sheriff disciplined Bybee in retaliation for Bybee's speech.  The sheriff's motion (Doc. 42) for summary judgment is **GRANTED**, and the Conley defendants' motion (Doc. 59) for summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The clerk is directed (1) to enter judgment for Tom Knight and against Frank Bybee, (2) to enter judgment for Jeffrey Conley and against Frank Bybee, and (3) to enter judgment for Conley RV and against Frank Bybee on counts four and five.

Count three against Conley RV remains, but because this order declines to exercise supplemental jurisdiction, the action is **REMANDED** to the Twelfth Judicial Circuit Court of Florida.  The clerk is directed to terminate the pending motion (Doc. 88), to remand the action, and to close the case.

ORDERED in Tampa, Florida, on January 27, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE